IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Stephanie Garcia, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 9611 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Brian Rix, Darrell McClay, and | ) | |
| City of Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Stephanie Garcia alleges that Defendants violated her constitutional rights by arresting her without probable cause. Defendants move to dismiss. For the reasons stated below, Defendants' motion is granted.

### Legal Standard

A Rule 12(b)(6) motion "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must provide "a short and plain statement of the claim" and must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citations omitted). Facial plausibility exists when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a motion to dismiss, the Court "accept[s] the well-pleaded facts in the complaint as true and draw[s] reasonable inferences in the plaintiff's favor." *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024).

**Background**

Plaintiff Stephanie Garcia was married to Yaniah Turner from 2011 to 2018. R. 29 ¶ 6. While married, they fostered children R.T., W.T., and L.T. *Id.* From 2015 to 2020, the Chicago Police opened multiple investigations regarding abuse of the children. *Id.* ¶¶ 7–41.

First, during interviews with Chicago police officers in July 2015, R.T. and W.T. alleged they had been sexually abused by their cousins. *Id.* ¶ 8. Detective Barclay then interviewed Turner, and Turner stated that she had not observed any abuse, and that she did not know whether to believe the allegations because R.T. had "made up so much stuff before." *Id.* ¶ 9. Barclay then reviewed medical records from a hospital, which did not corroborate R.T.'s alleged injuries. *Id.* ¶ 10. Barclay also found that R.T.'s statements at the hospital were "significantly inconsistent" with R.T.'s statements at the police interview. *Id.* This investigation was ultimately suspended. *Id.* ¶ 11.

Second, during a therapy session in August 2016, Turner alleged that Garcia harmed the children. *Id.* ¶ 13. Following these allegations, the Chicago Police opened an investigation. *Id.* ¶ 14. When the police interviewed Turner, Turner stated that R.T. had been diagnosed with autism and psychosis and that "he cannot distinguish what is real and what is imagined." *Id.* ¶ 16. When the police interviewed R.T., R.T. stated that he had been abused by cousins but that no one else had abused him. *Id.* ¶ 17. This investigation was also suspended. *Id.* ¶ 19.

Third, in February 2018, the Chicago Police received a child abuse hotline notification from a therapist, who indicated that Turner had stated that Garcia had sexually abused R.T. and W.T. *Id.* ¶ 21. The Chicago Police opened an investigation, and Detective Darrell McClay interviewed Turner regarding the alleged abuse. *Id.* ¶¶ 22–23. In her interview, Turner stated that the alleged abuse had been previously investigated, and she declined additional police services. *Id.* ¶ 24. This investigation was also suspended. *Id.* ¶ 25.

Finally, in May 2020, Detective McClay received a DCFS hotline report from therapist Corey Dabney who stated that Garcia had sexually abused R.T., W.T., and L.T. *Id.* ¶¶ 27, 31. Detective Brian Rix was assigned to the case and interviewed R.T., W.T., and L.T. in June 2020. *Id.* ¶¶ 28–29. During these interviews, R.T., W.T., and L.T. each verified that Garcia had sexually abused them and that Garcia regularly lived with them. *Id.* ¶ 29. Detective Rix then interviewed Turner. *Id.* ¶ 30. Turner stated that Garcia lived at a shelter and did not regularly live with Turner and the children. *Id.* Detective Rix then interviewed Turner a second time, and Turner stated that R.T. suffered from delusions and that Turner did not know whether the allegations of sexual abuse against Garcia were "realistic or fabricated." *Id.* ¶ 32. Detective Rix interviewed Turner a third time, and Turner stated that Turner had never allowed Garcia to babysit the children. *Id.* ¶ 34. While investigating the case, Detective Rix also reviewed prior case files from the incidents in 2015, 2016, and 2018. *Id.* ¶ 36. Following the above-mentioned interviews and after reviewing the prior case files, Detective Rix and Detective McClay caused Garcia to be arrested and detained. *Id.* ¶ 39.

In January 2024, the criminal case against Garcia was dismissed with prejudice. *Id.* ¶ 41. Garcia filed this case in October 2024, R. 1, and Defendants moved to dismiss, R. 14. Garcia responded by filing a first amended complaint. R. 29. Defendants now to dismiss the amended complaint. R. 31. The amended complaint alleges the following counts:

    Count I: Unlawful Pretrial Detention under 42 U.S.C. § 1983 against Rix and McClay
    Count II: Malicious Prosecution under federal law against Rix and McClay
    Count III: Malicious Prosecution under Illinois law against Rix and McClay
    Count IV: Respondeat Superior against the City of Chicago
    Count V: Indemnification against the City of Chicago

**Discussion**

"Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed . . . a crime." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). The existence of "[p]robable cause to arrest is an absolute defense" to claims "against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). This applies to claims for unlawful pretrial detention under § 1983 and claims for malicious prosecution under both federal law and Illinois law. *See Washington v. City of Chicago*, 98 F.4th 860, 868–78 (7th Cir. 2024) (probable cause as defense against unlawful pretrial detention under § 1983 and malicious prosecution under Illinois law); *Thompson v. Clark*, 596 U.S. 36, 44 (2022) (probable cause as defense against malicious prosecution under federal law).

"[Q]ualified immunity affords an added layer of protection" to a probable cause defense "by shielding officers from suit for damages if a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Abbott*, 705 F.3d at 714 (citations omitted). "Because qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, a law enforcement officer will be immune to claims based on an arrest without probable cause unless it is obvious that no reasonably competent officer would have believed that there was probable cause to arrest." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (citations omitted). "Thus, qualified immunity applies not only to those officials who correctly determine that probable cause to arrest exists, but also to those governmental officials who reasonably but mistakenly conclude that it does." *Id.*

4

As stated above, if Defendants reasonably but mistakenly believed that probable cause existed for Garcia's arrest, Counts I, II, and III must be dismissed. In turn, Counts IV and V would also fail as they rely on those underlying claims. *See Winn v. City of Chicago*, 2022 WL 80272, at *7 (N.D. Ill. Jan. 6, 2022) ("respondeat superior is not a basis for an independent claim"); *Baskins v. Gilmore*, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018) ("indemnification claim necessarily will be tied to an underlying claim for liability"). Taking the facts of the amended complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has pled herself out of court. As alleged, Defendants reasonably believed that probable cause existed for Garcia's arrest.

When Defendants arrested Garcia, the Defendants had interviewed the three children, who each verified that Garcia had sexually abused them. Any reasonable police officer knowing that not one, but three independent witnesses, each of whom gave statements to a trained professional stating that a person sexually abused them, would believe that these statements alone were enough to bring charges against that person and for a jury to decide whether that person was guilty or not. Defendants had also received multiple hotline calls from trained therapists—spread across several years—who reported that Garcia had sexually abused the children. These were not one-off allegations made by a single witness, but rather consistent allegations made over a prolonged period of time. Finally, Defendants were aware that Turner had reported the abuse to a therapist on at least two occasions. Such evidence is more than enough for Defendants to have reasonably believed that probable cause existed for Garcia's arrest. *See Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003) ("Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed.").

Plaintiff argues that Defendants were aware of "crucial facts" that undermined the credibility of the witnesses, and thus that they should have engaged in further investigation prior to Garcia's arrest. R. 34 at 3–4. For example, the fact that R.T. was prone to hallucinations. Or that in Turner's interviews with the police, Turner stated that she had never observed sexual assault, which contradicted her statements to the therapists. But these sorts of credibility issues do not undermine a reasonable belief of probable cause. As the Seventh Circuit explains:

> Nothing suggests that a victim's report must be unfailingly consistent to provide probable cause. The credibility of a putative victim or witness is a question, not for police officers in the discharge of their considerable duties, but for the jury in a criminal trial. We refuse to require law enforcement officers to delay arresting a suspect until after they have conclusively resolved each and every inconsistency or contradiction in a victim's account.

*Spiegel*, 196 F.3d at 725 (citations omitted).

In sum, because Defendants reasonably believed that probable cause existed for Garcia's arrest, all five claims are dismissed.

## Conclusion

For the reasons stated above, Defendants' motion [31] to dismiss is granted in full and the case is dismissed with prejudice. Civil case terminated.

SO ORDERED.  ENTERED: September 10, 2025

 

**HON. JORGE L. ALONSO**
**United States District Judge**